ABRAHAM ALTER et al., Trading as The Maryland
Lumber Company,

vs.

WILLIAM ECKHARDT.

*Mechanic's Lien—Materials Furnished—Evidence.*

On a bill to enforce a lien for materials furnished a contractor erecting a building, *held* that the evidence was insufficient to show that the owner of the property agreed to be responsible for the price of the materials.

*Decided June 26th, 1923.*

Appeal from the Circuit Court for Anne Arundel County, In Equity (Moss, J.).

Bill by Abraham Alter and Benjamin Kolker, trading as the Maryland Lumber Company, against William Eckhardt. From a decree for defendant, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*John S. Strahorn,* with whom was *Harry T. Kellman* on the brief, for the appellants.

*James M. Munroe,* with whom was *Emil Budnitz* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The bill of complaint, in this case, was filed by the appellant against the appellee in the Circuit Court for Anne Arundel County, to enforce what is claimed to be a lien against the property of the appellee, under article 63, of the Code of Public General Laws, entitled "Mechanics' Lien."

The bill charges that, on or about the month of June, 1921, the plaintiff contracted with the defendant, to furnish and did furnish certain lumber, mill work, sash, doors, blinds, &c., to be used and which were used in and about the erection and

construction of a dwelling house, built by the defendant, William Eckhart, on a tract of land or ground known as Lots Nos. 23 and 24, in a development known as Bar Harbor, fronting on Rock Creek, in the Third Election District of Anne Arundel County.

The bill further avers, that the plaintiff has completed its part of the contract for the furnishing of the materials so used in the erection and construction of the dwelling house, that its claim for such materials, so furnished, is overdue, and the defendant though often requested to do so, has failed to pay the same.

The bill then avers that the plaintiff duly filed, in the clerk's office of the Circuit Court for Anne Arundel County, its claim, as a lien against the dwelling house and the ground upon which the same is erected, as well as so much other ground immediately adjacent thereto as may be necessary for the ordinary and useful purposes thereof, which claim contains an accurate description of the location of the property, and sets forth the nature, kind and amount of materials so furnished by the plaintiff for or about the erection and construction of the dwelling, and the time when and the prices for which the same were agreed to be furnished. And the plaintiff files herewith, as part hereof, the original of the lien claim, marked "Complainant's Exhibit No. 1," where it appears that there is due and owing to the plaintiff from the defendant the sum of five hundred and eighty-one dollars and sixty-nine cents being the balance of the whole bill for the materials so furnished, after deducting a credit of $350, for and on account of payment made thereon on June 9th, 1921.

The prayer of the bill is, that a decree may be passed by the court for the sale of the property, or so much thereof, as may be necessary to satisfy the lien claim, interest and costs, and that the lien claim may be paid, with interest, and then, a prayer for general relief.

On January 13th, 1922, the defendant made answer to the plaintiff's bill, as follows:

"(1) The defendant denies that in June, 1921, or at any other time did the plaintiffs contract with this defendant to furnish mill work, sash, doors, blinds or any other material to be used in or about the erection and construction of a dwelling house by the defendant in Anne Arundel County, on a tract of ground which this defendant is the owner of; that this defendant entered into a contract with a certain Conrad Muhl for the erection and construction of a dwelling on his property at Bar Harbor, but this defendant does not know of his own knowledge from whom the said Conrad Muhl secured the materials for the erection of said dwelling, nor was any notice served upon him by the said plaintiffs that they furnished the said Conrad Muhl with the said building materials, or that they intended to claim a lien against said building, or the said ground.

"(2) The defendant has no knowledge of the matters and facts alleged in the second paragraph of the bill, and can therefore neither admit nor deny the same, but calls for strict proof of its allegations.

"(3) This defendant is informed that the plaintiffs have filed a mechanic's lien against his property, in the clerk's office of the Circuit Court for Anne Arundel County, but he denies that the quantity of building materials mentioned in said lien claim was used in the construction of said building, and

"(4) Further answering said bill of complaint, this defendant denies that he ever had any agreement, contract or dealings with the plaintiffs for the purchase of material for the erection or construction of said building, or that he is indebted to said plaintiff in any sum."

The case was heard upon bill, answer and proof, and from a decree of the Circuit Court for Anne Arundel County, refusing the relief sought by the bill, and dismissing the plaintiff's bill, the plaintiff has taken this appeal.

A large amount of testimony was taken on both sides and is set out in the record. We have examined it with much care, but we do not find it sufficient to establish the allegations of

the bill, or to make out such a case as would authorize the court to enforce the plaintiff's claim as a lien against the property.

While there is some testimony on the part of the plaintiff, standing alone, which tends to show that the plaintiff sold the materials to the defendant, and held him responsible for the debt, but this testimony is directly contradicted by the defendant himself and by other witnesses in the case, on behalf of the defendant.

It appears from the testimony and the pleadings in the case, that William Eckhardt, the defendant, was the owner of the small lot of land on Rock Creek, in Anne Arundel County, and that he made a contract with one Conrad Muhl to furnish material and build him a small bungalow upon the same, the total price being seventeen hundred dollars, and the evidence shows that the contract price has been paid by the defendant, Eckhardt, to the contractor, Conrad Muhl.

The defendant, William Eckhardt, testified in answer to the twenty-second question as follows: "A gentleman came over to see me, after I made the contract with Muhl, and asked me if I was going to do some building at Rock Creek, and I told him 'Yes,' I made a contract with Muhl, and he asked me what kind of a man he was. Told him I did not know only he built a house on the adjoining lot and I was going to have him put up a house for me, on the same dimensions, three rooms and a kitchen, only where Mr. Windel had a porch on three sides, I wanted a porch around the entire house, and that was the only difference in the two buildings. He asked me if I owned any other property, and I said no, I disposed of all my other property, I sold the piece on the corner adjoining where I lived, and I had money enough left to erect this house and I could pay Muhl every week as he went along, or would pay him as he progressed with the building. The fellow said, won't you be responsible for this bill and I told him with the only plain word 'No,' I made a contract with Muhl and it is up to him to furnish everything." In answer to the twenty-third question he says: "I don't know where their office is,

or where the lumber yard is, never been near the place, don't know where they are situated or located and never saw a member of the firm until the house was built."

In answer to the twenty-fourth question, he said, that he never saw any member of the firm until after this thing was all over and the house was built. After receiving these letters, a gentleman said, let's settle this peaceably, and I said, I have nothing to settle, I have settled with Muhl the only one I had any contract with and I have settled with him. That is the only time I ever saw any people from The Maryland Lumber Company.

"25Q. Do you know Harry Muhl, the son of Conrad Muhl? A. Just from meeting him down there, working there with his father. 26Q. He says in answer to the question whether or not he ever heard any question between you and his father or between you and The Maryland Lumber Company, in reference to who should be responsible for the lumber, that The Maryland Lumber Company would not let his father have any lumber, and he heard you say down at the place it was all right, get what you want, I have seen The Maryland Lumber Company, did any such thing occur? A. Never had such a conversation with Mr. Muhl, he never asked me about the lumber, I don't know where their place is. 27Q. Then that is not true? A. I don't know anything at all about The Maryland Lumber Company, don't know where they are located, never had any conversation with any of them. 28Q. Did you ever make such a statement in Harry Muhl's presence at any time or any place? A. No, sir, his father never asked me about paying for the lumber."

The witness, Lena Kemper, who was present at the alleged interview between the defendant and one Irving Kolker, testified in answer to the seventh question, as follows:

"7Q. One of the witnesses calling himself Irving Kolker testified he went down to Mr. Eckhardt's home to see him and ask him whether it would be all right to charge material to him, due to the fact that they did not wish to supply mate-

rial to Conrad Muhl, and he was perfectly satisfied for them to do that. Will you please state whether or not you were present at any interview between the party giving his name as Irving Kolker, or coming from The Maryland Lumber Company, in reference to the sale of lumber by that company to Conrad Muhl for the purpose of building a house for Mr. Eckhardt at Bar Harbor, and if you were, please state what you then and there heard the parties say? A. Mr. Eckhardt and this gentleman were in my parlor, I was standing in the hall. I was eaves dropping I suppose, but this is what I heard, he asked Mr. Eckhardt if Muhl was going to build a house for him, Eckhardt, and Eckhardt told him 'Yes,' he then asked whether he owned any property; Mr. Eckhardt told him 'No,' he did not own any property, but he said I have money to pay for this house when completed, he told him, Muhl, had been there to see him in reference to getting some lumber, and he asked him did he know Muhl, and Eckhardt told him no, he only had seen him building a house adjoining him, and took it from what he had down there, he did not know anything at all about it, but he was going to pay Muhl weekly as he advanced on the property, which I know he did, in my presence. 8Q. Anything said by this party to Eckhardt about Eckhardt becoming responsible for the lumber furnished Muhl? A. Mr. Eckhardt said positively no, he was going to pay him every week and no need for him to run any bills. 9Q. Anything more said that you heard? A. That was all I heard then. 10Q. Have you heard at any other time anything in reference to this? A. That man never came any more until we went down there on the place, July 2nd, he turned the key over, and I think it was four or five months before he heard any more, and they simply sent the balance of the bill, the balance due, came there in the name of John Eckhardt."

The testimony of Conrad Muhl, the contractor, as set out in the record, is not very certain or definite, as to whether the defendant agreed to pay for the lumber or whether the plaintiff had refused him credit. He testified, in answer to

the eleventh and twelfth questions, "No, it was not talked about, who was to be responsible," no talk about who to charge it to, and the plaintiffs did not refuse him credit in plain words.

There is other testimony on the part of both the plaintiff and the defendant, but after a proper consideration of all the testimony, we are unable to hold that the plaintiff has established such a case as would authorize the court to enforce its claim as a lien against the property in question. The proof is not sufficient to bring the claim within the requirements of the statute. Section 23, article 63, of the code.

It is also clear, that the plaintiff cannot enforce a lien for materials furnished Conrad Muhl, the contractor, because the time for service of notice has passed. By section 11 of article 63 of the Code, it is provided that if the contract for furnishing such work or materials or both shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall not be entitled to a lien unless, within sixty days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien.

It appears from the account filed with the lien claim, that the material was furnished from June 9th, 1921, to June 20th, 1921, and the date of the notice is September 9th, 1921, almost one month too late, as to the proper time required by law.

For the reasons we have given, the decree of the Circuit Court for Anne Arundel County, dated the 6th of January, 1923, refusing the prayer of the plaintiff's bill and dismissing the same, will be affirmed, with costs.

*Decree affirmed, with costs.*